UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES O. MOORE,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

Case No. 1:14-CV-375

HON. GORDON J. QUIST

**OPINION**

      This is an action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that the Commissioner's decision shall be conclusive if supported by substantial evidence. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

**Background**

      Plaintiff, James O. Moore, filed an application for DIB benefits on February 2, 2009, alleging a disability onset date of November 17, 2007. Plaintiff alleged that his disability arose from injuries sustained in an auto accident. Those injuries included head injuries, neck and back injuries, broken bones in his skull, broken ribs, and other complications. After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge (ALJ). On February 25, 2011, an ALJ issued a decision finding Plaintiff not disabled. The Appeals Council subsequently

remanded Plaintiff's claim, and a different ALJ held a second hearing. After that hearing, the ALJ issued a written decision finding Plaintiff not disabled. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence could have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## Analysis of the ALJ's decision

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

3

procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2295 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff had several severe impairments, including cervical fusion with cage, bilateral comminuted facial fractures, obesity, lumbar degenerative disk disease, and affective disorder. (Dkt. #7-2 at Page ID#82.) The ALJ went on to find that none of Plaintiff's impairments met or equaled the criteria of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.* at Page ID#46-48). With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform medium work subject to several articulated limitations. The ALJ found that Plaintiff could not perform his past relevant work, but that there were a significant number of jobs in the national economy that Plaintiff could perform. Thus, the ALJ concluded that Plaintiff was not disabled.

### 1. Plaintiff's Credibility

An ALJ may properly consider the credibility of the claimant in evaluating complaints of pain. *Walters*, 127 F.3d at 531. Although the ALJ's findings based on credibility are accorded great weight and deference, they must be supported by substantial evidence. *Id.* Plaintiff argues that the ALJ's determination that Plaintiff was not credible was not supported by substantial evidence.

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Rather, once a claimant establishes the existence of an underlying medical condition, the ALJ must determine whether the objective medical evidence confirms the extent of the alleged pain or confirms that the condition is of such a severity that it can reasonably be expected to produce the alleged pain. *Duncan v. Sec'y of Health and Human Servs.*,

4

801 F.2d 847, 253 (6th Cir.1986). In evaluating claims of pain that cannot be shown through objective medical evidence, the ALJ is to "consider [a claimant's] statements about the intensity, persistence, and limiting effects of [his] symptoms." 20 C.F.R. § 404.1529. "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Soc. Sec. Rul. 96–7p. Other relevant evidence includes: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. (Dkt. #7-2 at Page ID#84.) In making that determination, the ALJ engaged in a thorough discussion of the objective medical evidence, and concluded that it did not support Plaintiff's alleged level of impairment. (*Id.*) In looking beyond the objective medical evidence to other relevant evidence, the ALJ focused almost exclusively on Plaintiff's treatment, which the ALJ found had been "essentially routine or conservative in nature." (*Id.* at Page ID#85.)

In discussing Plaintiff's treatment, the ALJ explained that although Plaintiff had been to a pain clinic in September 2008, he had not returned to that clinic. (*Id.* at Page ID#86.) The ALJ further noted that Plaintiff had gone extended periods without treatment for his back pain. (*Id.*)

5

Finally, the ALJ explained that Plaintiff's treating physician, Dr. Stewart, recommended low impact exercise, aqua therapy, spine strengthening, and a conditioning program. (*Id.*) He noted that Dr. Stewart had stated that Plaintiff would likely improve his symptoms if he was diligent with a regular exercise program. (*Id.*) The ALJ also highlighted Dr. Stewart's note stating that Plaintiff was unable to continue physical therapy because his insurance had been cut off, but that he was trying to do exercises at home a couple days per week. (*Id.*) The ALJ concluded:

> It is apparent to me, as it was to this treating physician, that if claimant were to diligently engage in a regular strengthening and conditioning exercise program, his symptoms, including pain, and his functionality would significantly improve. While no one can force an individual to get off the couch and exercise for health, neither should anyone be able to force taxpayers or the government to pay for an able-bodied individual to lie on the couch and complain.

(*Id.* at Page ID#87.)

The ALJ's description of Dr. Stewart's opinion is not supported by the record. Dr. Stewart's notes stated merely that she was "hopeful" that Plaintiff's symptoms could improve if he continued diligently with his regular exercise. Dr. Stewart further noted that Plaintiff was "a good candidate for chronic pain management." The ALJ's description of Dr. Stewart's notes, however, implies that Dr. Stewart believed that if Plaintiff simply exercised more, his pain would disappear and his functionality would return. The ALJ's conclusion that Plaintiff simply needed to exercise to improve his symptoms and functionality is based on this mischaracterization of Dr. Stewart's opinion.

Moreover, it is not clear from the ALJ's opinion exactly which exercises he believed that Plaintiff was failing to complete. Dr. Stewart's most recent records stated that Plaintiff was completing his home exercises three to four times per week. (Dkt. #7-8 at Page ID#534.) Because the ALJ did not explore that issue at the hearing, there is nothing to indicate that the regularity with which he was completing his home exercises had decreased. Thus, it is not clear why the ALJ believed that Plaintiff refused to "get off the couch and exercise for health."

6

If the ALJ was in fact referring to Plaintiff's failure to continue physical therapy, his analysis was also flawed. In determining a claimant's credibility, an ALJ must consider whether the level or frequency of treatment is inconsistent with the alleged pain, or if the records demonstrate that the claimant is not following prescribed treatments *without good reason*. SSR 96–7p (emphasis added). An ALJ may not draw inferences from a failure to pursue medical treatment without considering explanations for such failure, such as "that the individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.*

Plaintiff told both Dr. Stewart and the ALJ that he did not continue physical therapy as recommended because he lacked health insurance and could not afford to continue such treatment. Although the ALJ cited a note from Dr. Stewart that Plaintiff's insurance had been cut off, he never discussed how Plaintiff's lack of insurance impacted his findings regarding Plaintiff's treatment. Thus, it appears that the ALJ drew inferences from Plaintiff's failure to pursue physical therapy without considering whether he was unable to afford such treatment. In doing so, the ALJ failed to follow the relevant regulations.

The ALJ erred in describing the opinion of Dr. Stewart, and compounded that error by relying on the mischaracterized opinion to conclude that Plaintiff was not credible in describing his pain. The ALJ further erred in failing to consider whether Plaintiff had a good reason for failing to follow the treatment recommended by Dr. Stewart.

### 2. **Cognitive Defects**

Plaintiff argues that the RFC assigned by the ALJ did not properly take account of Plaintiff's cognitive defects. Plaintiff points primarily to the records of a neurocognitive study performed days after the accident in 2007, arguing that it showed impaired attention, short-term memory and concentration, and indicated a closed head injured/traumatic brain injury.

Ten days after Plaintiff's accident, he completed neuropsychological testing with Dr. Alan Lewandowski. Dr. Lewandowski documented some "mild limitations with simple attention and sustained concentration," and noted that Plaintiff described some "mild confusion." (Dkt. #7-7 at Page ID#433.) The report concluded that Plaintiff had a "post closed head injury/traumatic brain injury." (*Id.* at Page ID#434.) The ALJ did not afford Dr. Lewandowski's conclusions "great weight" because the ALJ determined that they were not consistent with the objective examination and mental status findings, nor with a CT scan completed directly after Plaintiff's accident that showed no injury. (Dkt. #7-2 at Page ID#88.) The ALJ also explained that the exam was conducted 10 days after the accident, and there was no evidence of lasting symptoms or cognitive impairment. (*Id.*) Finally, the ALJ noted that Dr. Lewandowksi's opinion was based primarily on Plaintiff's subjective complaints. (*Id.*) The ALJ did not err in this assessment.

Similarly, the ALJ adequately explained his reasons for rejecting the opinion of a consultative psychologist who concluded that Plaintiff was "unable to sit, stand, walk, or lay for any period of time without pain," and that it was "going to be extremely difficult for him to maintain any type of employment." (Dkt. #7-7 at Page ID#495.) The ALJ explained that (1) the opinion addressed an issue reserved to the Commissioner; (2) Plaintiff's described physical limitations would not necessarily preclude him from working; (3) the opinion regarding Plaintiff's physical functioning was outside the expertise of a psychologist; and (4) no physical exam was conducted. (Dkt. #7-2 at Page ID#86.) Plaintiff has failed to explain how the ALJ's conclusion was in error, and the Court finds none.

Finally, the ALJ did not err in affording some weight to the observations of a family practitioner that Plaintiff was cooperative and that his memory appeared intact. The ALJ recognized that the doctor was not a psychologist, but concluded that his "clinical observations as a trained

physician" were entitled to "some weight," and were "consistent with other physician observations throughout the record." (*Id.* at Page ID#88.) There is no error in this finding.

In sum, the ALJ did not err in assessing the evidence of Plaintiff's cognitive condition.

### 3. Physical Limitations in the RFC

The ALJ concluded that Plaintiff had the residual functional capacity to perform medium work subject to several articulated limitations. This finding was based, at least in part, on the ALJ's conclusion that Plaintiff's testimony regarding his physical symptoms was not credible. For instance, Plaintiff testified that the heaviest weight that he could comfortably lift was ten pounds (Dkt. #7-2 at Page ID#157), but the ALJ assigned an RFC that included an ability to lift up to 50 pounds. Because the RFC determination was based on the ALJ's conclusion that Plaintiff was not credible, it must be reconsidered upon remand.

### Conclusion

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. However, a plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). While the ALJ's decision fails to comply with the relevant legal standards, there is not compelling evidence that Plaintiff is disabled. According, the matter must be remanded for further factual findings, including but not necessarily limited to an accurate assessment of whether Plaintiff's statements regarding his impairments are credible. A order consistent with this Opinion shall issue.

Dated: September 25, 2015    /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE